United States District Court
District of Massachusetts

| | |
|---|---|
| United States of America )<br>)<br>v. )<br>)<br>Djuna Goncalves, Cody Goncalves )<br>and Anthony Goncalves, )<br>)<br>Defendants. )<br>) | Criminal Action No.<br>18-10468-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendants Djuna Goncalves ("Djuna"), Cody Goncalves ("Cody") and Anthony Goncalves ("Tony") (collectively, "Goncalves brothers" or "defendants") have been charged, alongside several other individuals, with conspiracy to distribute drugs and possession of drugs and firearms. Pending before this Court is the joint motion of defendants to suppress evidence seized from their persons and residence in February, 2014 and October, 2018. They also move to suppress evidence obtained from stationary pole cameras installed in the vicinity of their residence and request a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). For the reasons that follow, that motion will be denied.

I.  **Background**

   **A. 2014 Investigation and Arrest of Cody**

   In February, 2014, state and local police in Massachusetts conducted a joint investigation into the suspected drug trafficking activities of Djuna and Cody.

   During the investigation, officers received information about defendants from two confidential informants ("CI-1" and "CI-2").  CI-1 reported that both Djuna and Cody lived at 12 Addison Avenue in Brockton, Massachusetts and that CI-1 had observed them with large quantities of heroin at that location. CI-1 informed officers that, within the preceding month, the informant had observed heroin packaged for distribution in Cody's bedroom on the second floor of the residence and in Djuna's bedroom in the basement.

   CI-2 reported purchasing heroin from Cody on several occasions over a period of four months.  According to CI-2, Cody normally completes drug transactions in public locations in Brockton and that, on at least one occasion, CI-2 observed Cody arrive at the location of a drug deal in a grey Nissan sedan. On February 28, 2014, CI-2 advised officers that Cody would be completing a large-scale heroin transaction at a specific Dunkin' Donuts located in Brockton.

Later that day, officers conducting surveillance observed a grey Nissan sedan pull into the driveway of 12 Addison Avenue. Cody entered and quickly left the residence and was seen driving to the Dunkin' Donuts location identified by CI-2.  Before he could enter the restaurant, Cody apparently noticed police officers in the area and began to run.  Officers apprehended him and found on his person 150 grams of heroin and 3.5 grams of cocaine.

**B. 2014 Warrant and Search of 12 Addison Avenue**

Following the arrest of Cody, officers arrived at 12 Addison Avenue to secure the location while the government applied for and received a warrant to search that residence ("2014 Warrant").  Massachusetts State Police Trooper Scott Dunn ("Trooper Dunn") filed an affidavit in support of the warrant application ("2014 Affidavit") describing the information from the two confidential informants and details of Cody's arrest. The 2014 Affidavit also included evidence that Djuna and Cody resided at 12 Addison Avenue, information regarding the training and experience of Trooper Dunn with respect to narcotics investigations and details of the lengthy criminal histories of Djuna and Cody.

Upon executing the 2014 Warrant, officers seized 250 grams of heroin, three firearms, ammunition, approximately $40,000 in

United States currency, assorted drug paraphernalia and identifying paperwork.

### C. 2018 Warrant and Search of 12 Addison Avenue

Early in the morning of October 21, 2018, Brockton Police Officers responded to alerts by ShotSpotter, the City's electronic gunshot detection system, that shots had been fired in the area of 12 Addison Avenue. Officers discovered shell casings on the ground outside of the residence and evidence that several bullets had traveled through basement windows and a wall on the first floor.

After speaking to and obtaining consent to enter from Maria Goncalves, the owner of the residence and mother of defendants, officers searched the premises for potential shooting victims. While they were in the basement, Djuna came down the stairs and attempted to enter his bedroom. At that point, officers observed a firearm on a table in plain view. Djuna was arrested and the residence was secured while officers applied for a search warrant.

Brockton Police Sergeant William Carpenter ("Sergeant Carpenter") filed an affidavit in support of the warrant application ("2018 Affidavit") describing the events of that day and containing information about the 2014 search of 12 Addison Avenue, evidence connecting Djuna and Cody to that residence and

their criminal histories. On the basis of the 2018 Affidavit, a warrant was issued to search 12 Addison Avenue for firearms and ammunition.

Upon execution of that warrant, officers located suspected narcotics and drug distribution materials. Sergeant Carpenter filed another affidavit in support of an additional warrant application ("the Second 2018 Affidavit") and a second warrant was issued authorizing the search of the residence for narcotics evidence. Officers seized two firearms, various firearm magazines and ammunition, quantities of several different drugs, suspected drug packaging items, U.S. currency and identifying documents.

**D. The Challenge to the Warrant and its Execution**

In November, 2020, Djuna and Cody filed a motion to suppress the evidence seized from their persons and from the residence at 12 Addison Avenue. The following day, Tony moved to join his brothers' motion which joinder was allowed. The government opposes the joint motion.

The Goncalves brothers assert that the 2014 search and seizure of Cody was unlawful and that the 2014 Warrant was not supported by probable cause. They also contend that the government had no legal basis for the warrantless entry and search of 12 Addison Avenue in 2018 and that all evidence seized

pursuant to the 2018 warrants should be suppressed. Finally, defendants assert that the government unlawfully installed stationary pole cameras outside of the Goncalves residence without a warrant and, as a result, all evidence obtained thereby should be suppressed.

## II. Discussion

### A. Probable Cause to Arrest and Search Cody

A warrantless arrest of an individual in a public place is constitutional if supported by probable cause. Maryland v. Pringle, 540 U.S. 366, 370 (2003). Probable cause exists when the collective knowledge of the officers at the time of the arrest was "sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." United States v. Link, 238 F.3d 106, 109 (1st Cir. 2001) (internal citation omitted).

When probable cause is primarily based upon information provided by a confidential informant, law enforcement must provide some information from which the informant's credibility may be established. United States v. White, 804 F.3d 132, 136-37 (1st Cir. 2015). The First Circuit Court of Appeals ("First Circuit") has identified a "non-exhaustive" list of factors to consider when assessing an informant's credibility, including:

> (1) the probable veracity and basis of knowledge of the informant; (2) whether an informant's statements reflect first-hand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable; and (4) whether a law enforcement officer assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's information.

Id. (internal citation omitted).

The Goncalves brothers contend that there was no probable cause to arrest and search Cody in 2014. Specifically, they aver that authorities failed to corroborate information provided by CI-2 and that CI-2's prior drug use weighs against a finding of reliability.

The information available to law enforcement at the time of Cody's arrest was more than sufficient to establish probable cause for his arrest and the search of his person. Officers possessed information from two informants each of whom corroborated the account of the other as to the fact that Cody was involved in drug distribution. See United States v. Schaefer, 87 F.3d 562, 566 (1st Cir. 1996) ("Courts often have held that consistency between the reports of two independent informants helps to validate both accounts."). The information provided was based upon each informant's first-hand experience either observing Cody in possession of drugs for distribution or purchasing drugs directly from Cody. See United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002) ("The credibility of an

- 7 -

informant is enhanced to the extent he has provided information that indicates first-hand knowledge.").

The credibility of CI-2, specifically, is bolstered by the fact that CI-2 admitted involvement in criminal activity against his or her own penal interest. See United States v. Schaefer, 87 F.3d 562, 566 (1st Cir. 1996) ("The fact that an informant's statements are against his or her penal interest adds credibility to the informant's report."). Police were also able to corroborate much of the information provided by CI-2 at the time of Cody's arrest, namely the time and location of the heroin transaction and the use of a grey Nissan sedan.

Finally, "unprovoked flight upon noticing the police" is suggestive of wrongdoing and "is a pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Once officers had lawfully arrested Cody, it was constitutional for them to search his person for evidence that may otherwise be concealed or destroyed. See United States v. Wurie, 728 F.3d 1, 3 (1st Cir. 2013).

Accordingly, the seizure of Cody and the subsequent search of his person in 2014 were lawful and defendants are not entitled to suppression of the evidence obtained thereby.

### B. 2014 Search of 12 Addison Avenue

#### 1. Probable Cause for the 2014 Warrant

A sworn affidavit filed in support of a search warrant is entitled to a presumption of validity. See United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012); see also Illinois v. Gates, 462 U.S. 213, 234 (1983) ("[C]ourts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." (brackets in original) (internal citation omitted)).  A magistrate judge is entitled to deference as to the finding of probable cause and the decision to issue a search warrant should be reversed only if there is "no substantial basis . . . for concluding that probable cause existed." United States v. Dixon, 787 F.3d 55, 58-59 (1st Cir. 2015) (internal citation omitted).

Probable cause exists when, based upon the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238.  A warrant application must demonstrate probable cause to believe that

> (1) a crime has been committed -- the "commission" element, and (2) enumerated evidence of the offense will be found at the place searched -- the so-called "nexus" element.

United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999).

Defendants challenge the 2014 Warrant on the ground that the 2014 Affidavit failed to establish a nexus between the residence at 12 Addison Avenue and the suspected drug trafficking activity.

The information in the 2014 Affidavit gives rise to a fair probability that evidence of drug trafficking would be found at 12 Addison Avenue.  In the warrant application, Trooper Dunn described the information from CI-1 and CI-2 relating to the drug trafficking activities of Djuna and Cody at 12 Addison Avenue.  He detailed officers' observations of Cody briefly stopping at his residence before proceeding to a scheduled drug transaction.  The 2014 Affidavit also included evidence that Djuna and Cody resided at 12 Addison Avenue, details of their lengthy criminal histories and information regarding the training and experience of Trooper Dunn with respect to narcotics investigations.  Based upon the content of the 2014 Affidavit, this Court sees no substantial basis upon which the clerk-magistrate's determination of probable cause should be overturned.

United States v. Roman, 942 F.3d 43 (1st Cir. 2019), cited by defendants, does not warrant a different result.  In Roman, "no witness could provide any real support for the proposition that [Roman] was an established drug dealer." United States v.

Roman, 311 F. Supp. 3d 427, 440 (D. Mass. 2018). Furthermore, the affidavit in support of the warrant in Roman "fail[ed] to even on one occasion place Roman himself at the residence." Roman, 942 F.3d at 52. Because the 2014 Affidavit contains ample evidence that Djuna and Cody were established drug dealers and lived at 12 Addison Avenue, Roman is inapposite.

Defendants' also assert that the fruits of the 2014 search should be suppressed because officers conducted a warrantless search of the residence prior to securing the 2014 Warrant. That contention is to no avail. Even if the initial entry to 12 Addison Avenue were unlawful, suppression is not warranted because the 2014 Affidavit contained sufficient information to establish probable cause to search the premises independent of the allegedly illegal entry. See United States v. Dent, 867 F.3d 37, 40 (1st Cir. 2017) ("Whether the initial entry into a home was illegal or not is irrelevant to the admissibility of the challenged evidence where there was an independent source for the warrant under which that evidence was seized." (brackets and quotation marks omitted)).

### 2. Franks Hearing

A Franks hearing is warranted only if a defendant makes "substantial preliminary showings" that 1) a false statement or omission in a warrant affidavit was made knowingly or with

reckless disregard for the truth and 2) the falsehood or omission was necessary to the finding of probable cause. Rigaud, 684 F.3d at 173.

Defendants assert that they are entitled to a Franks hearing because CI-1's assertion that Djuna was in the presence of drugs at 12 Addison Avenue is contradicted by a sworn statement signed by Djuna in which he denies residing at 12 Addison Avenue during the month when CI-1 claims to have seen him there.

Defendants have not shown, however, that Trooper Dunn deliberately or recklessly made a false statement in the 2014 Affidavit. Furthermore, Djuna's statement is contradicted by other evidence. Records from the Massachusetts Registry of Motor Vehicles and the Massachusetts Board of Probation indicate that Djuna resided at 12 Addison Avenue and his mother, Maria Goncalves, signed an affidavit in which she stated that Djuna lived with her at that location until his arrest in 2018.

Accordingly, a Franks hearing is not warranted.

**C. 2018 Search of 12 Addison Avenue**

In addition to challenging the 2014 searches, defendants submit that law enforcement officers unlawfully entered onto and searched the property of 12 Addison Avenue following reports of gunshots in 2018, rendering all evidence seized thereafter as

"fruit of the poisonous tree." According to the Goncalves brothers, the warrantless entry was not justified by any exigent circumstances.

To the contrary, the warrantless entry by police officers was constitutionally sound. It is well-established that police may enter a residence without a warrant "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). Under that "emergency aid exception," officers need only demonstrate that they had an "objectively reasonable basis" to believe an individual inside the residence required immediate aid. Hill v. Walsh, 884 F.3d 16, 23 (1st Cir. 2018) (quoting Michigan v. Fisher, 558 U.S. 45, 47 (2009)).

As detailed in the 2018 Affidavit, police were dispatched to the vicinity of 12 Addison Avenue in response to alerts that several gunshots had been fired. Officers found shell casings outside of defendants' residence and observed bullet holes in two basement windows and an exterior wall on the first floor. Under those circumstances, it was objectively reasonable for police to believe that there were injured individuals in the residence, particularly on the first floor and in the basement, requiring immediate aid.

For that reason, officers lawfully entered the premises and whether the owner, Maria Goncalves, consented to that entry, which defendants dispute, is irrelevant. The motion to suppress the evidence seized in the ensuing search will, therefore, be denied.

### D. Stationary Pole Camera Surveillance

In a last-ditch effort to suppress evidence that could be used against them, the Goncalves brothers submit that the installation of stationary pole cameras in the vicinity of 12 Addison Avenue constitutes a Fourth Amendment search for which a warrant is required.

Defendants concede that their position is "currently foreclosed by First Circuit precedent." They cite to United States v. Moore-Bush, 963 F.3d 29 (1st Cir. 2020) in which the First Circuit reversed a lower court ruling that would have required officers to obtain a warrant in order to conduct pole camera surveillance. Despite that precedent, the Goncalves brothers hold out hope that an en banc review by the First Circuit will lead to a contrary result.

Even if the First Circuit were to reverse the current state of the law, suppression of the pole camera evidence would not be warranted. The Supreme Court has held that

> [e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.

Davis v. United States, 564 U.S. 229, 241 (2011). When the pole cameras were installed in 2018, the relevant binding precedent was United States v. Bucci, 582 F.3d 108 (1st Cir. 2009), in which the First Circuit concluded that pole camera surveillance is not a search within the meaning of the Fourth Amendment because "[a]n individual does not have an expectation of privacy in items or places he exposes to the public." Bucci, 582 F.3d at 117.

Accordingly, defendants are not entitled to the requested relief.

### ORDER

For the foregoing reasons, the motion of defendants Djuna, Cody and Anthony Goncalves to suppress evidence and for a Franks hearing (Docket No. 589) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 4, 2021